IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
RICHLAND DIVISION

| | |
|---|---|
| Ms. Karen Anderson,<br><br>       Plaintiff,<br><br>  v.<br><br><br>South Carolina Department of Social Services-Child Support, Regional Director-Brenda Cummings, Assistant Director-Glenn Hasty, Former Manager-Brandon Tant, Supervisor-Edward Epps, Supervisor for Driver's License Suspension -Katina Miller Ragin, Former Supervisor-Cali Jefferson, Former Supervisor-Ferra Porter, Compliance-Rena Miller Vinson, Personnel-Kristen Tobias, and HR-Janella Shields,<br><br>       Defendants. | Case No.: 3:25–cv–12722-JFA-SVH<br><br>**COMPLAINT**<br>Jury Trial Requested |

<u>Introduction</u>

Ms. Karen Anderson, by and through her undersigned counsel, brings the following Causes of Action against Defendants in violation of The Americans with Disabilities Act of 1990 and HIPAA. The Plaintiff asserts claims of Hostile Work Environment/Retaliation in violation of The Americans with Disabilities Act of 1990, Breach of Contract, and Gross Negligence, and Negligent Conduct in violation of HIPPA against Regional Director-Brenda Cummings, in her individual capacity, Supervisor-Edward Epps, in his individual capacity, and Supervisor for Driver's License Suspension-Katina Miller Ragin, in her individual capacity, based on the following allegations.

<u>ADMINISTRATIVE CHARGE</u>

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this

lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

    a.  Plaintiff timely filed a Charge with the South Carolina Human Affairs Commission on May 18, 2022.

    b.  Plaintiff <u>received</u> a Notice of Right to Sue from the South Carolina Human Affairs Commission on May 30, 2025.

Plaintiff has timely filed this action within (120) days from the date on which she received her Notice of Right to Sue.

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343, and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under, 28 C.F.R. part 36, 42 U.S.C. Section 12101 and Section 12182, (Title I and Title II of The Americans with Disabilities Act of 1990) and other Federal statutes. This Court also has pendant, ancillary, and supplementary jurisdiction over so much of this action as it is based on State law.

2. Venue is proper in the Richland Division because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where the Defendants do business and may be found.

### PARTIES

3. Plaintiff Karen Anderson is a citizen of the State of South Carolina and resides in Newberry County.

1. Defendant, South Carolina Department of Social Services- Child Support, is a S.C. State Agency that is formed and administered under the laws of South Carolina headquartered in Richland, County, South Carolina. South Carolina Department of Social Services-Child Support is S.C. State Agency conducting business and operations in the state of South Carolina, having agents, employees, offices, or properties in Richland County, South Carolina, within the Judicial District. At all times relevant to this Complaint, Defendant South Carolina Department of Social Services acted by and through its agents, servants, employees, and/or officers. Defendant South Carolina Department of Social Services-Child Support is legally organized and exists under the Code of Laws of the State of South Carolina.

2. Upon information and belief, Defendant Brenda Cummings is a State of South Carolina citizen, residing in Dorchester County.

3. Upon information and belief, Defendant Glenn Hasty is a State of South Carolina citizen, residing in Richland County.

4. Upon information and belief, Brandon Tant is a State of South Carolina citizen, residing in Richland County.

5. Upon information and belief, Defendant Edward Epps is a State of South Carolina citizen, residing in Richland County.

6. Upon information and belief, Defendant Katina Miller Ragin is a State of South Carolina citizen, residing in Richland County.

7. Upon information and belief, Defendant Cali Jefferson is a State of South Carolina citizen, residing in Richland County.

8. Upon information and belief, Defendant Ferra Porter is a State of South Carolina citizen,

residing in Richland County.

9. Upon information and belief, Defendant Rena Miller Vinson is a State of South Carolina citizen, residing in Richland County.

10. Upon information and belief, Defendant Kristen Tobias is a State of South Carolina citizen, residing in Richland County.

11. Upon information and belief, Defendant Janella Shields is a State of South Carolina citizen, residing in Richland County.

## STATEMENT OF FACTS

12. Plaintiff is a 58-year-old African American female who began employment with the Defendant South Carolina Department of Social Services-Child Support, beginning March 3, 1990. Plaintiff started as a mail clerk and advanced through the ranks to become a Case Manager 1, handling her own list of cases.

13. Plaintiff prides herself on being an exemplary employee. In fact, Plaintiff's advancement from mail clerk to Case Manager 1 demonstrated Plaintiff's hard work, determination, and devotion to the success of Defendant South Carolina Department of Social Services-Child Support's advocacy for responsible parenting, family self-sufficiency, and child well-being by providing assistance.

14. Plaintiff's success with Defendant South Carolina Department of Social Services- Child Support was so outstanding that Plaintiff's notes and work were used as examples to train incoming staff.

15. Plaintiff prides herself on being an exemplary employee and having a respectful relationship with all of her supervisors and never having any disciplinary action taken against her, such as write-ups regarding anything, including Plaintiff's work

performance.

16. However, Plaintiff's work environment drastically changed when Plaintiff became chronically ill with an unknown illness beginning on November 15, 2018.

17. Plaintiff's health condition and well-being deteriorated rapidly to the point that Plaintiff had a difficult time walking and moving around due to the constant and tremendous pain Plaintiff was in.

18. Plaintiff went to numerous doctors, but Plaintiff was never diagnosed with an actual illness until years later, when she became aware that she had a rare form of hip tumor that could not be treated. Plaintiff later endured a serious hip replacement procedure in 2019 to combat Plaintiff's pain and discomfort.

19. Unfortunately, due to Plaintiff's illness being blind to the naked eye, the Defendant, and its agents, Defendants Edward Epps and Katina Ragin, began to falsely accuse and harass Plaintiff of faking her illness beginning July 25, 2022.

20. Defendants' false allegations against Plaintiff escalated to the point where Plaintiff was forced to have one of her co-workers go to her doctor's appointments with her to prove/verify that Plaintiff was indeed battling a chronic illness and was in constant pain.

21. To Plaintiff's dismay, despite such a co-worker verifying Plaintiff's chronic health condition and the pain she endured, Plaintiff was still falsely accused and harassed for faking an illness.

22. Upon information and belief, on July 7, 2022, Plaintiff's personal health information was disseminated by Defendants Edward Epps and Katina Ragin to other workers within her department who were not privileged to such information.

23. Plaintiff asserts that Plaintiff's harassment on the job intensified in a close temporal

proximity to such dissemination of Plaintiff's personal health information.

24. Plaintiff, within a short time, thereafter, complained to her Director, Defendant Brenda Cummings, about the inappropriate dissemination of Plaintiff's personal health information and Defendants Epps and Ragin's blatant HIPAA violation. However, to Plaintiff's shock and dismay, Plaintiff's concerns were left unanswered.

25. Plaintiff asserts that Defendant Epps began to assign Plaintiff job duties that none of her similarly situated colleagues had to perform and that were in complete violation of Plaintiff's accommodations, such as moving large tables and chairs for meetings and events.

26. Plaintiff further asserts Defendant Epps recklessly sought to circumvent Plaintiff's long-standing accommodations by forcing Plaintiff to complete tasks that were restricted by Plaintiff's physician.

27. Plaintiff subsequently reported her issues of harassment and hostility by Defendants Epps and Ragin to her Regional Director, Defendant Brenda Cummings, beginning in July of 2022. However, instead of Plaintiff's complaints being met with sincerity and understanding, Plaintiff's complaints were met with disapproval, and Plaintiff was instead forced to apologize to Defendants Epps and Ragin.

28. Plaintiff subsequently reported such harassment and hostility by Defendants Epps and Ragin to Personnel through Mr. Ellis Stokes on numerous occasions, ranging from July 18, 2022, until November 3, 2022, only to be retaliated against further for having an investigation issued by Mr. Stokes into Plaintiff's complaints.

29. Plaintiff asserts that Plaintiff's complaints to Mr. Ellis Stokes, Personnel, and the increased retaliation she faced were in a close temporal proximity of time to one another

and were pretextually orchestrated by the Defendants to encourage Plaintiff's resignation.

30. After no assistance was given to Plaintiff's complaints, as a last resort, Plaintiff was forced to report the hostility and harassment directly to the State Human Affairs Commission on May 18, 2022.

31. As a result of Plaintiff's State Human Affairs complaint, the hostility and harassment Plaintiff endured reached an all-new level, to where Plaintiff was being verbally assaulted by her previous supervisors, Defendants Rena Miller Vinson and Ferra Porter, and co-worker Cali Jefferson.

32. Plaintiff asserts that on multiple occasions, Defendants Vinson, Porter, and Jefferson verbally assaulted Plaintiff in front of clients and co-workers in court in retaliation for Plaintiff's reasonable accommodations. As a result of such verbal abuse, Plaintiff was informed by management to file an official letter on October 2, 2020.

33. Following Plaintiff's official letter on October 2, 2020, Plaintiff asserts her work environment continued to be hostile and pervasive to the point where Plaintiff was yet again forced to report such hostile work environment and retaliation to Personnel again with Defendant Kristen Tobias.

34. Plaintiff asserts that she reported the hostile work environment she had to endure at the hands of Defendants Epps, Ragin, Vinson, Porter, and Jefferson on May 12, 2023, June 14, 2023, and July 26, 2023, to Defendant Tobias to no avail. Plaintiff asserts that Defendant Tobias deliberately ignored Plaintiff's complaints and condoned the hostile and pervasive behaviors of Defendants Epps, Ragin, Vinson, Porter, and Jefferson.

35. Furthermore, Plaintiff asserts that beginning May 24, 2023, she was not allowed to park in the visitor parking when there was no handicap parking despite having medical

documentation diagnosing Plaintiff with a chronic illness that required Plaintiff to use handicap or visitor parking because of her debilitating health condition.

36. Because Defendants failed to provide Plaintiff with the appropriate accommodation for parking due to Plaintiff's health condition, Plaintiff was forced to park around the side of the building and walk more than 500 ft. to her office, which was in complete opposition to Plaintiff's work restrictions per her physician's request for accommodations.

37. Unfortunately, to Plaintiff's shock and dismay, Plaintiff's retaliation and hostility on the job intensified even more upon the arrival of her former Direct Manager, Defendant Brandon Tant, on October 2, 2023.

38. Plaintiff asserts that immediately upon Defendant Tant's arrival as Plaintiff's new Manager, Defendant Tant engaged in a pattern and practice of retaliation and creation of a hostile work environment against Plaintiff.

39. On several occasions, Plaintiff was falsely accused by Defendant Tant of actions she did not do to undermine Plaintiff's authority and to destroy Plaintiff's reputation within the Agency.

40. Defendant Tant's false accusations amounted to and included:

- Falsely accusing Plaintiff of leaving for court late on July 27, 2023, when Plaintiff had arrived at court on time and had made Defendant Brenda Cummings aware of her arrival.

- Falsely accusing Plaintiff of failing to notify a staff member of her lunch break on October 24, 2023, when Plaintiff had already notified her co-worker of her designated break as both were working together to ensure shifts were covered.

- Falsely accusing Plaintiff on November 20, 2023, of making an unnecessary

doctor appointment on a scheduled court date. Plaintiff asserts that a majority of her physician appointments were scheduled before work hours began. In fact, Plaintiff was able to attend the scheduled court date on time.

- Falsely accusing Plaintiff of not doing work on January 2, 2024, when Plaintiff was not present at work, as she was out of work on that day.

- Falsely accusing Plaintiff on December 4, 2024, of not working and requiring Plaintiff to provide activity sheets for each case she worked on. None of Plaintiff's similarly situated colleagues were forced to complete this additional task.

41. Plaintiff asserts that Plaintiff's health condition and pain at this time became so debilitating that she was unable to pick up anything, walk, stand up after sitting, or even get out of bed. As a result of Plaintiff's limited mobility and functionality of life, Plaintiff requested FMLA leave on April 8, 2024. However, on multiple occasions after such approval, Plaintiff's supervisor, Defendant Brenda Cummings, and Defendant Glen Hasty, failed to approve Plaintiff's FMLA leave to work from home for 4-5 days a week, as requested by her physician, and were instead only approved for one day a week on April 19, 2024.

42. Once Plaintiff's correct FMLA leave to work from home for 4-5 days a week was granted by Defendants, as her physician had requested, Plaintiff asserts the level of harassment and hostility towards Plaintiff intensified drastically to where Plaintiff was constantly accused of faking an illness and that her pain was not as severe as Plaintiff proclaimed it to be.

43. As a result of Plaintiff's granted FMLA leave and the intensified hostility Plaintiff was

facing for such leave, Plaintiff was forced to report such hostility and harassment to her chain of command in HR.

44. Plaintiff asserts that the retaliation and harassment Plaintiff faced on the job reached an all-time high on January 30, 2024, when Plaintiff was called in for an impromptu meeting with Defendant Janella Shields, HR, and Defendant Brenda Cummings under the guise that Plaintiff's complaints of harassment and retaliation were being addressed, which were not addressed by Defendant Hasty. In fact, Plaintiff asserts that instead of taking Plaintiff's complaints against Defendant Tant with sincerity and concern, Plaintiff was met with hostility and was deemed the troublemaker within the situation.

45. To Plaintiff's shock and dismay, this meeting on January 30, 2024, did not concern Plaintiff's numerous complaints about the retaliation and harassment Plaintiff had endured at the behest of Defendant Tant and other Defendants but was a ploy by Defendant Shields and Cummings to discuss a complaint made by one of Plaintiff's co-workers about a false accusation of not receiving lunch breaks.

46. Plaintiff was so distraught by the false allegation made against her that she began to have a mental breakdown and was forced to work from home for the next three days due to the level of stress and anxiety this meeting caused Plaintiff.

47. Despite Plaintiff's distraught mental state, Defendant Cummings continuously pressured Plaintiff during the January 30, 2024, meeting to sign the complaint made against her without making a full investigation into the complaint at hand.

48. Plaintiff vehemently declined to sign such a complaint and was provided with EAP information and guidelines because of her diminished mental state and the stress inflicted upon her from the January 30, 2024, meeting.

49. On February 1, 2024, Plaintiff requested a copy of such complaint made against her, but was instead told by Defendant Shields she would receive a copy on February 2, 2024. Later that day, Plaintiff was surprisingly met with an email from Defendant Cummings accusing Plaintiff of failing to maintain satisfactory and harmonious working relationships, despite Plaintiff never having received any previous write-ups or reprimands on this matter and not receiving the alleged write-up that was discussed in the January 30, 2024, meeting, although Plaintiff had previously requested such documentation that same day.

50. On February 26, 2024, Plaintiff's stress level was so high due to the hostile work environment Plaintiff endured on the job, Plaintiff was admitted was taken to the ER and was diagnosed with Trigeminal neuralgia.

51. Plaintiff asserts that despite her emotional breakdown from the January 30, 2024, meeting, on March 26, 2024, Defendant Cummings continued to pressure Plaintiff into signing the alleged complaint against Plaintiff.

52. Plaintiff later reported the harassment and hostility she endured to her Direct Manager, Georgie Corneilous, on February 25, 2025. Plaintiff's Direct Manager spoke directly to Defendants Epps and Ragin about their false allegations and to cease the harassment of Plaintiff. However, despite Plaintiff's Direct Manager's best efforts to stop the harassment and hostility Plaintiff was enduring, Plaintiff's harassment and hostility continued.

53. Plaintiff asserts that the actions of the Defendants are pretextual and orchestrated to force Plaintiff's resignation or ultimate termination.

54. Plaintiff further asserts that because of Defendants' active retaliation and hostile work

environment, such actions have detrimentally affected both Plaintiff's physical and mental health, causing both to deteriorate drastically while employed with Defendant South Carolina Department of Social Services-Child Support.

## FIRST CAUSE OF ACTION

*Hostile Work Environment and Retaliation in Violation of The Americans with Disabilities Act of 1990, as to Defendants South Carolina Department of Social Services-Child Support, Former Manager-Brandon Tant, Supervisor-Edward Epps, Supervisor for Driver's License Suspension -Katina Miller Ragin, Former Supervisor-Cali Jefferson, Former Supervisor-Ferra Porter, and Compliance-Rena Miller Vinson, in their official capacities.*

55. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

56. Plaintiff has a good faith belief that her reasonable accommodations, which were assessed and documented by her licensed physician, were a protected activity and were a legitimate need to perform her duties effectively in her job. Defendants Epps and Ragin were grossly negligent in disseminating Plaintiff's medical information to non-supervisory staff and actively retaliating against Plaintiff for obtaining her reasonable accommodations & FMLA leave.

57. On information and belief, Plaintiff contends that Defendants Epps and Ragin harassed and retaliated against Plaintiff due to her medical condition and disability under The Americans with Disabilities Act of 1990. Plaintiff further contends that after she raised concerns about Defendants' dissemination of her private medical information, Plaintiff

was retaliated against by Defendants Epps, Ragin, Tant, Vinson, Porter, and Jefferson.

58. Plaintiff asserts Defendants created a hostile work environment based on her disability by harassing Plaintiff about her disability and by trying to void Plaintiff's accommodations. Plaintiff contends the Defendant Agency condoned the actions of Defendant Epps, Ragin, Tant, Vinson, Porter, and Jefferson to create an adverse, hostile, and pervasive environment for Plaintiff due to her accommodations. The Defendants' conduct was pretextual and designed for the express purpose of retaliating against Plaintiff to force Plaintiff's resignation.

59. There is a clear and obvious causal connection between Plaintiff's reasonable accommodations being provided and the adverse action taken by Defendants Epps, Ragin, Tant, Vinson, Porter, and Jefferson, acting in their official capacities, to seek Plaintiff's resignation. The Defendants' actions were a coordinated effort designed for the purpose of retaliation due to the Plaintiff raising concerns regarding her protected reasonable accommodations.

60. Plaintiff asserts that her new job duties placed upon her in retaliation by Defendant Epps to void Plaintiff's accommodations, were designed to violate her ADA status to force her to quit. Specifically, Defendants Epps and Ragin, in their official capacities, acted with reckless disregard for her privacy, all with the intent to create a hostile work environment based on a disability.

61. In failing to protect Plaintiff's rights under The Americans with Disabilities Act of 1990, as amended, Defendants acted with malice/or reckless indifference to try not to provide her with reasonable accommodations based on Plaintiff's medical condition. Defendants Tant and Epps actively worked to undermine Plaintiff by making false allegations about

Plaintiff and assigning Plaintiff job duties in opposition to Plaintiff's health restrictions. Defendants Tant and Epp's conduct was pervasive, hostile, and retaliatory towards Plaintiff.

62. Defendants Vinson, Porter, and Jefferson intentionally and deliberately created a hostile work environment for Plaintiff for the sole purpose of encouraging Plaintiff's resignation.

63. Defendants Epps and Ragin purposefully violated The Americans with Disabilities Act of 1990 by violating Plaintiffs' rights to privacy and confidentiality when discussing Plaintiff's health condition and reasonable accommodations outside the chain of command for the exact purpose of retaliation for Plaintiff's advocacy for protection under The Americans with Disabilities Act of 1990.

<u>SECOND CAUSE OF ACTION</u>

*Breach of Contract as to Defendants South Carolina Department of Social Services- Child Support, Defendant Regional Director-Brenda Cummings, Assistant Director-Glenn Hasty, Personnel-Kristen Tobias, and HR-Janella Shields*

64. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

65. Plaintiff and Defendant entered into a binding and legal contract for employment with the South Carolina Department of Social Services- Child Support as a mail clerk and later a Case Manager 1, beginning March 3, 1998. Plaintiff accepted the offer of employment and agreed to fulfill her position in exchange for valuable consideration, her salary, and Defendant's guarantee that she would be protected from retaliation, a hostile work environment, and her private medical information being disseminated to her co-workers and to for such information to be treated as confidential.

66. Defendant maintained an employment handbook and its mandatory policies and procedures to include Plaintiff's job description, which set out conditions that Plaintiff performed regardless of her disability.

67. Plaintiff continuously and diligently worked for Defendant for 35 years and has almost reached the age of retirement.

68. At all times during her employment, Plaintiff relied on the mandatory promises contained in Defendant's handbook, policies and procedures, and governing documents.

69. Defendant breached its employment contract with Plaintiff when Plaintiff's personal medical information was disseminated on July 7, 2022, to her fellow co-workers, and Plaintiff was later retaliated against and harassed due to such dissemination. Defendants failed to protect Plaintiff from such retaliation and harassment based on a disability and violation of her medical privacy.

70. Defendants actively tried to void Plaintiff's reasonable accommodations. Furthermore, Defendant's adverse action created undue stress and a hostile work environment based upon her disability, forcing medical anxiety upon Plaintiff.

71. Defendants Cummings, Hasty, Tobias, and Shields have unjustifiably failed to perform the mandatory promises within their Handbook by failing to address Plaintiff's complaints of retaliation and a hostile work environment, and instead held Plaintiff responsible for Defendants' actions towards her. Defendants further failed to prevent such an environment from existing within the Agency.

72. Based on the aforementioned actions, Defendants breached their contractual obligations to Plaintiff through their mandatory policies and procedures in their Handbook.

## THIRD CAUSE OF ACTION

*Gross Negligence and Negligent Conduct in Violation of Health Insurance Portability and Accountability Act of 1996 (HIPAA) as to Defendants Regional Director-Brenda Cummings, Supervisor-Edward Epps, and Supervisor for Driver's License Suspension - Katina Miller Ragin, in their individual capacities.*

73. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

74. Defendants had a duty of care to act with reasonable care regarding Ms. Anderson's privacy rights centered around her personal medical information concerning her reasonable accommodations, to avoid preventable harm to Ms. Anderson's identity and livelihood. Defendants breached that duty on July 7, 2022.

75. Defendants had a duty to safeguard the confidentiality, integrity, and availability of Ms. Anderson's personal health information (PHI) and to protect her PHI from unauthorized individuals and employees, which Defendants grossly and negligently disseminated her confidential information to non-privileged staff.

76. The Defendants had a duty to handle Ms. Anderson's PHI with due care and not to delay notifications of a breach concerning her PHI.

77. Furthermore, without limitation, the Defendants had a duty to comply with all current federal and state laws concerning the care of private medical information, rights to medical records, and health information disclosures, and rights to who can receive medical records and health information, including but not limited to The Health Insurance Portability and Accountability Act of 1996, Public Law 104-91 Sections 261-264, and any other local, state, and federal law and current professional organization standards.

78. Plaintiff asserts that the South Carolina Department of Social Services-Child Support, Defendant Cummings, were on notice that some of Plaintiff's co-workers were disseminating information concerning Plaintiff's medical condition and reasonable accommodations.

79. Defendants South Carolina Department of Social Services-Child Support and Cummings knew that Ms. Anderson's PHI disclosure was a possible HIPAA violation on July 7, 2022.

80. Despite the notice, Defendants failed to act with the necessary reasonable care for Ms. Anderson's PHI. They were grossly negligent, reckless, willful, and/or wanton in one or more of the following particulars:

   a. Failing to safeguard the confidentiality, integrity, and availability of Ms. Anderson's PHI.

   b. Failing to handle Ms. Anderson's PHI professionally and confidentially.

   c. Failing to limit Ms. Anderson's PHI access to only authorized individuals and personnel.

   d. In failing to prevent the unauthorized use or disclosure of Ms. Anderson's PHI.

   e. In failing to notify the proper chain of command about the breach discovered concerning Ms. Anderson's PHI through two employees, Defendant Edward Epps and Defendant Katina Miller Ragin, who were responsible for such breach.

81. As a result of the aforementioned negligence of Defendants' willful and wanton lack of reasonable care concerning the duty owed to Ms. Anderson's PHI, Ms. Anderson's PHI was disseminated to several unauthorized co-workers who ultimately created a hostile work environment for Plaintiff and retaliated against Plaintiff upon discovery of such

information, therefore making such dissemination the proximate cause of Plaintiff's

hostile work environment and retaliation.

<u>PRAYER FOR RELIEF</u>

**Wherefore**, the Plaintiffs pray for the following:

1. That Plaintiffs are granted all their claims.

2. That Defendants are denied all counterclaims and defenses.

3. For Attorney's fees and cost to prosecute this action

4. For a Jury Trial.

5. For actual, special, consequential, and punitive damages.

6. For such and other awards as this Honorable Court deems just and proper.


Respectfully Submitted,

s/Donald Gist_____
Donald Gist (13098)
GIST LAW FIRM, P.A. 4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

September 26, 2025                                    Attorney for Plaintiff